Filed 9/16/13  Image 2000 Multimedia, Inc. v. Quin CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| IMAGE 2000 MULTIMEDIA, INC., et al., | D061776 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2007-0062035-CU-BC-CTL) |
| YVONNE T. QUIN, as Trustee, etc., | |
| Defendant and Appellant. | |
| _____ | |
| YVONNE T. QUIN, as Trustee, etc., | |
| Plaintiff and Appellant. | (Super. Ct. No. 37-2008-00033205-CL-UD-EC) |
| v. | |
| IMAGE 2000 MULTIMEDIA, INC., et al., | |
| Defendants and Respondents, | |

APPEAL from an order of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

Law Offices of Robert Lynn, Robert H. Lynn and Kevin R. Yee for Defendant, Plaintiff and Appellant.

Maldonado & Markham and William A. Markham for Plaintiffs, Defendants and Respondents.

Yvonne T. Quin, trustee of the Joseph Quin Family Trust (Landlord), appeals an order denying, in part, her request for attorney fees as prevailing party under a lease containing an attorney fees provision. Quin, in her capacity as trustee, served as the landlord under the lease. Image 2000 Multimedia, Inc. and El Cajon Grand Cocktail Lounge (together Lessees) were the lessees under the lease.[1] Landlord contends the superior court abused its discretion by failing to engage in a proper lodestar analysis in determining the amount of reasonable fees to award Landlord's previous trial counsel, Slater & Truxaw LLP (Slater).

Landlord, however, minimizes the unique procedural history of this litigation in making her arguments. When this matter first proceeded to trial, Lessees prevailed and were entitled to their attorney fees. The matter involved two issues: whether an option under the lease was exercised and possession of the leased premises. In their motion for attorney fees, Lessees asked for $126,854.87. In opposing Lessees' motion, Landlord characterized Lessees' motion as an example of "the legal profession at its worst" because Lessees' attorneys requested such an "astounding amount." She expressed outrage at the "profiteering, abuse, and sheer audacity set forth in the billings of" Lessees' attorneys and described the subject billings as "shocking and disgusting." In the end, Landlord argued

_____

[1] The lease was guaranteed on behalf of the Lessees by Alex Kalogianis and Jason Kreider. Neither individual is a party to this appeal although both were parties in the litigation below.

2

that, at most, the superior court should award attorney fees in the amount of $27,045.15 because "[n]othing more is warranted or supportable" for a case comprising a one-day bench trial.

The superior court was persuaded by Landlord's arguments and awarded Lessees $35,000 in attorney fees. Landlord appealed the superior court's judgment against her, and we reversed the judgment with directions for the superior court to enter judgment in favor of Landlord on the option issue and to conduct further proceedings on the possession issue. (See *Image 2000 Multimedia, Inc. v. Quin* (July 13, 2010, D055719) [nonpub. opn.].)

After the case was remanded, Landlord disqualified the previous trial judge and was assigned to a new court. After further proceedings, Landlord was determined to be the prevailing party and then moved for attorney fees and costs under the lease in the amount of $235,276.47. Of the requested amount, $145,739 concerned fees billed by Slater for pretrial and trial services involving the previous one-day bench trial. The same bench trial for which Lessees had previously requested $126,854.87 when they were the prevailing party (prior to the reversal on appeal) and Landlord argued the requested fees were "astounding," "shocking and disgusting." Yet, now that Landlord was the prevailing party, she failed to explain why Slater's fees for its pretrial and trial services, which surpassed the Lessees' requested amount by almost $20,000, were reasonable considering Landlord's previous arguments. The superior court noted this omission in awarding Landlord fees of $35,000 for pretrial and trial related tasks. The superior court, however, awarded Landlord additional fees and costs for posttrial and appellate services

3

in the amount of $89,034.97, resulting in an award of attorney fees and costs of $124,034.97.

Landlord only appeals the amount of the attorney fees awarded for Slater's services. Here, the superior court awarded a total of $47,000 comprised of the $35,000 for pretrial and trial services and $12,000 for posttrial tasks. Because we do not conclude the superior court abused its discretion, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from the litigation of two civil cases that were consolidated for all purposes and tried together in July 2008. The first of these cases was an action for declaratory relief that Lessees brought, alleging that they were entitled to a judicial decree that they had properly exercised an option to renew the term of the lease for an additional five years (the Option Case). The second of these cases was an action for unlawful detainer that Landlord brought against Lessees, alleging that it was entitled to summary repossession of the leased premises under the unlawful detainer (the UD Action).

The consolidated cases concerned two distinct issues: One, whether Lessees could exercise their option to renew the lease and had done so in a timely and proper manner; and, two, whether Lessees had timely obtained the insurance required by the lease. The Option Case concerned only the option issue. The UD Action concerned both issues. The cases were consolidated, and the original trial court tried the option issue during the first part of a one-day bench trial and the insurance issue during the second part of this trial.

4

The bench trial lasted a total of six hours, which occurred after the parties exchanged written discovery, conducted two short depositions (one lasted six hours and the other only two), and litigated a few pretrial motions. At the bench trial, the trial court found in favor of the Lessees on the option issue after a three-hour trial in the morning, ruling from the bench before recessing for lunch. In the afternoon, the trial court heard the insurance issue. After closing argument, the trial court instructed the parties to brief two specific issues concerning the insurance matter. The parties complied, after which the court delivered a judgment in favor of Lessees with a statement of decision.

After finding in favor of Lessees on all claims, the trial court heard Lessees' motion for attorney fees and costs, which were permitted under the lease. Lessees requested $126,854.87 in attorney fees, explaining in their submission that Landlord's attorneys had purposefully made the litigation far more contentious and complicated than necessary. In opposition, Landlord denigrated the request as "shocking" and "disgusting," and claimed it "represent[ed] the legal profession at its worst."

The Landlord's opposition also provided a comprehensive, point-by-point analysis of the following matters: (1) the procedures and tasks actually performed in the consolidated cases; (2) the attorney fees claimed for each procedure and task; and (3) the reasonable time that Lessees' attorneys should have devoted to each procedure and task actually performed in the consolidated cases. Landlord addressed the common tasks and procedures that both sides performed to conduct the litigation. Based on this analysis, Landlord concluded that the Lessees could not reasonably have incurred more than $27,045.15 in fees for all of the attorney and paralegal work in question in the

5

consolidated litigation, and that the remaining $99,809.72 of their request must be attributed to padding, duplicative work, inefficient work, improper overstaffing, and inappropriate charges for secretarial and clerical work.

In reply, Lessees provided their own point-by-point analysis of these same matters, explaining the procedures and tasks that their attorneys had actually performed in the consolidated cases, the fees that they requested for this work, and why the total fee request was reasonable on the basis of these matters. Lessees submitted a lodestar request in support of their motion for attorney fees, after which the parties traded competing analyses of this lodestar request in light of the billings of the case and the actual tasks required by the litigation.

At the hearing of the motion for fees, the original trial court expressly confirmed that it had reviewed these two competing lodestar analyses and would make its award of attorney fees on the basis of its conclusions about these analyses taking into account its understanding of exactly what had happened in the consolidated cases. During the hearing, Landlord's counsel questioned the trial court's methodology for awarding $35,000 in attorney fees. In response, the trial court confirmed that it reviewed the analyses provided by the parties. Although Landlord's counsel stopped short of asking for an hour-by-hour analysis to determine the lodestar amount, he continued to question how the court arrived at the final award amount. The trial court responded:

> "I have been the trial court, and the court is well aware of what went on in the case since I started on it from day one. And the way I arrived at it, I looked at both analyses from both counsel. I will be quite honest, I started with your [Landlord's counsel] analysis first. I thought it was appropriate. [¶] Again, this is where I think it's the

6

court's discretion. I thought there should be some additional attorney's fees added [to the amount argued by Landlord]. I think that was approximately $8,000. For the appellate record, I think that would be good. Based on that, I think there should be a little additional work added for this case. I think that would withstand appellate review."

After ruling on attorney fees, the original trial court issued a consolidated judgment, from which the Landlord successfully appealed, persuading this court to reverse the judgment in the Option Case resulting in the judgment being entered in favor of Landlord. We then remanded the case to the trial court for further proceedings in the UD Action, which concerned both the option issue (now resolved in the Landlord's favor) and the unresolved insurance issue.

On remand, Landlord disqualified the previous trial court judge, and the case was reassigned to a new superior court judge. After further proceedings consistent with our opinion, Landlord became the prevailing party and brought a motion for attorney fees, seeking $235,276.47 in fees and costs. Of the requested amount, $158,240 was for Slater's fees, which performed pretrial and trial work during the first trial as well as limited posttrial work resulting in $12,501 of Slater's total fees. Landlord requested an upper adjustment of the lodestar because of the difficulty of the litigation, Slater's skill and attention to the matter, and the success of the litigation. Nevertheless, Landlord failed to explain in any of her pleadings in support of her motion why Slater's fees were reasonable in light of her previous severe opposition to the fees Lessees requested when they were the prevailing party, prior to reversal of that judgment, for the same matter.

7

In opposing Landlord's motion, Lessees challenged specific fees for certain tasks, argued that Landlord's attorney fees were increased by her attorneys' litigation tactics, and sought to exclude fees for bundling and overstaffing. In addition, Lessees emphasized that Landlord's requested fees were well above the $27,045 Landlord claimed was appropriate on the original judgment when Lessees were considered the prevailing party. Landlord failed to address this final argument in her reply.

During oral argument on Landlord's motion for attorney fees, the superior court characterized Landlord's previous opposition to Lessees' motion for attorney fees as consisting of the theme: "No reasonable attorney could spend this much time on this kind of case." Landlord's counsel did not dispute this characterization. Instead, Landlord's counsel focused on two points. First, he questioned the lack of any lodestar analysis in the superior court's tentative ruling. Second, he argued he was not required to explain why Slater's fees of about $145,000 for pretrial and trial work were reasonable in light of the previous attack on Lessees' counsel's fees of $127,000 for the same work on the same case.

Landlord's counsel focused a large portion of his argument on the absence of a lodestar analysis in the tentative ruling. Landlord's counsel reminded the superior court that an earlier attorney fee award between the parties in a related case was reversed by the

8

appellate court because of a failure to conduct a proper lodestar analysis.[2]  The court

acknowledged this fact, but explained his approach to lodestar:

> "Absolutely.  I had forgotten that, but you're absolutely right.  So
> yes, I am familiar with that.  But I don't read it I guess in the sort of
> inflexible, wooden way that you may be suggesting.  I think that it is
> a framework, but I think there are other factors that one looks at.
> And in this case, like I think I said in the tentative, given the
> arguments that were made, focusing on that period of time, dealing
> with the initial litigation and the period up to the trial and judgment
> in that, you could have come back and responded and said you know
> what, there were reasons why it was appropriate for reasonable fees
> on the other side to be 35,000, but in our case for it to be 55 or 75 or
> whatever it is.  In other words, we had to do more work than they did
> and here are the circumstances.  But there was nothing to my
> understanding, anyway, by way of explanation in that regard.  So
> under those circumstances, I thought it was appropriate to use the 35
> for that period of time.  I analyzed each of the other periods of time
> and as you note, by and large agreed with you.  You made some
> adjustments and I appreciate that you did that and I accepted those."

Moving on from the lodestar analysis, the superior court emphasized its approach

in determining whether the attorney fees for the pretrial and trial work were reasonable

and Landlord's counsel's failure to address this threshold issue in light of Landlord's

previous opposition to the Lessees' motion for attorney fees:

> "Well no, at least I'm not – I don't think you understood what I was
> saying.  What I was saying is having pointed out the argument that
> you made on behalf of your client on the first attorney's fee motion,
> you in reply could have come back and said, you know, 35,000 was
> a reasonable fee for this firm to charge during this period of time for
> the following reasons:  However, it was reasonable for our side to
> have charged twice as much during that period or three times or four
> times as much, as it turns out during that period of time for the
> following reasons.  And sometimes I understand, [Landlord's

---

[2]    See *Quin v. El Cajon Grand Cocktail Lounge* (Nov. 6, 2008, D052193) [nonpub.
opn.]

counsel], that attorneys on one side of the case can make three times as much work for attorneys on the other side of the case because of their tactics and so on and so forth. So it is possible to justify it under the circumstances; there was nothing to indicate that."

Landlord's counsel confessed that he struggled in deciding not to address his previous argument, but reasoned that there was no need to do so because Landlord's motion for attorney fees concerned Landlord's counsel's fees not Lessees' counsel's fees. As such, Landlord's counsel concluded his previous analysis was not relevant to the issue before the court, and he could merely emphasize that the motion for attorney fees concerned a different law firm with dissimilar billings than Lessees' counsel. The superior court disagreed:

> "I don't think that would have been sufficient. In other words, again, and I don't want to belabor this. I think that it is fair to compare the work done by attorneys on one side of the case with attorneys on the other. It is not determinative, but it is a factor of comparison that one could use. In most cases there is or should be a proportionality between the work done on one side [of the] case and on the other side. So I think it's a fair comparison to make. I think in response to that comparison, which I think is what [Lessees' counsel] did, I think you had an obligation to offer an explanation and you didn't offer an explanation."

Ultimately, the superior court granted Landlord's motion for attorney fees, but did not award the amount Landlord requested for Slater's pretrial and trial work, reasoning:

> "The primary support for [Lessees'] claim of excessive fees comes, strangely, from Landlord's opposition to [Lessees'] earlier fee motion. In that motion [Lessees] sought prevailing party attorneys' fees of approximately $127,000 relating to pretrial and trial activities. Attacking this request with great fervor, Landlord's counsel characterized it as representing 'the legal profession at its worst.' [Citation.] He castigated [Lessees] for 'seek[ing] to recover the astounding amount of $126,854.87 for a one-day bench trial.' [Citation.] The billings submitted in support of the request were,

10

according to Landlord, 'shocking and disgusting to anyone in the legal profession." [Citation.] It argued that [Lessees] should be awarded only $27,000 in fees. [Citation.]

"Evaluating the motion, Judge Sturgeon largely agreed with Landlord, awarding only $35,000 or less than 30 percent of what was requested. [Citation.] The trial judge's views are particularly significant since it was he who observed first hand and in context the performance of the legal services at issue. It is largely for this reason that the reasonableness of the claimed attorneys' fees is committed to the trial court's sound discretion. (See *Serrano v. Priest* (1977) 20 Cal.3d 25, 49; *Excelsior Union High School Dist. v. Lautrup* (1969) 269 Cal.App.2d 434, 448.) It is difficult to see how having successfully argued that $127,000 was far too much for [Lessees'] counsel, Landlord can now maintain that $145,000 is just right for its legal fees incurred during the same period of time. Certainly he makes no attempt to offer an explanation.

"Accordingly, based on Landlord's arguments as accepted by Judge Sturgeon, the Court will limit [Landlord] to $35,000 for the pretrial and trial-related fees incurred . . . ."

The superior court also awarded Landlord additional attorney fees of $12,000 for posttrial work by Slater (out of $12,501 requested), $31,474 for fees incurred by Landlord's appellate counsel, and $38,002 for fees incurred by Landlord's current trial counsel, resulting in a total attorney fee award of $116,476 and costs of $7,558.97.

Landlord timely appealed the superior court's order, but limited her appeal to the amount awarded for Slater's fees covering pretrial and trial services ($35,000) and some posttrial work ($12,000).

## DISCUSSION

Except as provided for by statute, compensation for attorney fees is left to the agreement of the parties. (Code Civ. Proc., § 1021.) Civil Code section 1717 provides that reasonable attorney fees authorized by contract shall be awarded to the prevailing

11

party as "fixed by the court." Here, it is undisputed that the superior court awarded fees under Civil Code section 1717 because the fees were authorized by the lease.

We review an order granting or denying attorney fees for abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094-1095 (*PLCM*); *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148 (*Graciano*).) " 'Because the "experienced trial judge is the best judge of the value of professional services rendered in his court," we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion. [Citations.] However, " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action. . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " [Citations.] When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning.' " (*Id.* at pp. 148-149, quoting *In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1052; see also *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239-1240; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.)

To determine the amount of reasonable attorney fees to award to a prevailing party under Civil Code section 1717, a trial court must begin with the "lodestar," or the number of hours reasonably expended multiplied by the reasonable hourly rate. (*PLCM*, *supra*, 22 Cal.4th at p. 1095.) " 'California courts have consistently held that a computation of

12

time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.]" (*Ibid*.)  In determining a reasonable compensation, trial courts must carefully review attorney documentation of hours expended; "padding" in the form of inefficient or duplicative efforts is not subject to compensation.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132 (*Ketchum*); see also *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321 (*Christian Research*).)

Our high court made clear that, after determining the lodestar, a court may then adjust the basic lodestar fee based on different factors to fix a fee at the fair market value for the particular action.  (*Ketchum*, *supra,* 24 Cal.4th at pp. 1132, 1134.)  This adjustment as it applies to contractual attorney fee awards was explained in *PLCM*: " '[Civil Code] section 1717 provides for the payment of a "reasonable" fee.  After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.' " (*PLCM*, *supra*, 22 Cal.4th at pp. 1095-1096, quoting *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 77.)  The lodestar may be adjusted by the court based on factors "including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*PLCM, supra*, at p. 1096; see also *Graciano*, *supra*, 144 Cal.App.4th at p. 154, quoting *Ketchum*, *supra*, 24 Cal.4th at p. 1132 [lodestar may be adjusted by " 'the novelty and difficulty of the questions

13

involved, . . . the skill displayed in presenting them, . . . the extent to which the nature of the litigation precluded other employment by the attorneys, [and] the contingent nature of the fee award.' "].)  In exercising its discretion, the trial court must not intertwine considerations relevant to the determination of the lodestar amount with factors relevant to whether the lodestar should be adjusted.  (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 879.)

The lodestar is the primary means by which a trial court determines an objectively reasonable amount of fees to award.  (See *Ketchum*, *supra*, 24 Cal.4th at p. 1134; see also *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 324 [The "lodestar adjustment method of calculating attorney fees . . . is designed expressly for the purposes of maintaining objectivity."].)  However, a moving party seeking to recover its attorney fees under Civil Code section 1717 bears the burden of establishing the reasonableness of the fees claimed.  (*Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 16.)

Here, Landlord's primary argument is that the trial court erroneously failed to follow the lodestar method of calculating a reasonable attorney fee award.[3]  More specifically, Landlord contends the superior court failed to calculate the reasonable hourly rate and the reasonable number of hours expended by Landlord's counsel, which are both essential in determining the lodestar.  But a careful review of the record and

---

[3]    Landlord requests that we take judicial notice of two previous appeals (including the opinions and the records) involving the parties here.  While we are extremely familiar with these previous appeals and their accompanying records, we decline to take judicial notice of them for purposes of this opinion because these materials are not relevant to our evaluation whether the superior court abused its discretion.  (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

consideration of Landlord's argument reveal her belief that the court had a duty to provide its lodestar calculations to the parties. Indeed, during oral argument, Landlord's counsel made it abundantly clear that he believed the superior court was required to provide its lodestar calculations in its tentative ruling or otherwise explain its calculations at the hearing. In other words, Landlord's position appears to be that the superior court must "show its work" in calculating the reasonable fees awarded to a prevailing party under Civil Code section 1717.

Landlord, however, fails to provide any authority to support her position. Nor did we uncover any through our independent research. To the contrary, our high court has held that a trial court need not produce a statement of decision in support of its attorney fee award. (*Ketchum*, *supra*, 24 Cal.4th at p. 1140.) And, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ibid*.)

Here, we have the benefit of a good record on which to evaluate Landlord's claim. Landlord concedes that the parties filed "detailed submissions" that "would have provided a basis for the [superior] court to have made a reasoned decision for attorney fees." Landlord only challenges the attorney fee award for Slater's services. In their moving papers, Landlord asked for $158,240 in attorney fees for these services. Thus, Landlord asked the superior court to set the lodestar amount at $158,240 and then adjust that amount up for certain factors. (See *PLCM*, *supra*, 22 Cal.4th at p. 1096.)

In opposing Landlord's motion, Lessees challenged some of the billings, but also argued that the Landlord's request for fees for Slater's pretrial and trial work was severely

15

inflated considering Landlord's previous argument that Lessees' counsel should have only billed $27,045 for litigating the matter.

Here, the superior court stated that it considered evidence presented by the parties regarding the hours billed throughout the litigation, including pretrial, trial, posttrial, and appeal. It is the trial court's role to examine the evidence and we presume the trial court performed its duty. *(Christian Research, supra,* 165 Cal.App.4th 1315, 1324.) The superior court separated the fees billed by Slater into two categories. The first consisted of pretrial and trial work amounting to a claimed $145,739 in fees. The second consisted of posttrial work amounting to a claimed $12,501 in fees. For the first category, the superior court deferred to the trial court's determination, which was based on the Landlord's own arguments regarding what should have been billed for a "one day bench trial." The superior court thus adjusted the lodestar of $145,739 to $35,000, but provided Landlord an opportunity to justify the large disparity between what she previously stated was appropriate for the one-day bench trial and what her counsel billed for that same trial. Landlord refused to provide any justification whatsoever.

Landlord's unwillingness to explain why Slater's billings were more than the amount she characterized as "astounding" (among other more colorful descriptions) is puzzling. In opposing Landlord's motion for attorney fees, Lessees raised the issue of the fees' reasonableness in light of the Landlord's opposition to the Lessees' previous motion for attorney fees, but Landlord did not address that argument whatsoever. The superior court gave Landlord ample opportunity to discuss the reasonableness of Slater's fees at oral argument, but Landlord eschewed delving into that topic. Instead, Landlord focused

16

on the court's failure to provide its lodestar calculations. Perhaps, Landlord could not provide an adequate explanation against the backdrop of her stinging tirade challenging Lessees' counsel's fees for a one-day bench trial, which were less than what Landlord requested here.

Landlord's failure to provide any justification for Slater's fees beyond merely submitting copies of the billings limited the superior court's ability to evaluate the reasonableness of the requested fees. Similarly, this omission also limits our ability to evaluate the superior court's use of discretion in determining the reasonable amount of attorney fees.[4] In the end, we are left without a reason why Slater's counsel's fees surpassed the "shocking and disgusting" total Lessees previously requested. Simply put, Landlord failed to establish Slater's pretrial and trial fees were reasonable although it was her burden to do so. (See *Civic Western Corp. v. Zila Industries, Inc.*, *supra*, 66 Cal.App.3d at p. 16.)

Where the trial court severely cuts the number of compensable hours in a fee award, we infer the court determined the request was inflated. (*Christian Research*, *supra*, 165 Cal.App.4th at p. 1323.) Here, the superior court obviously determined Slater's fees were overstated. Based on the record, we are satisfied the superior court was well within its discretion to reduce the lodestar. (See *PLCM*, *supra*, 22 Cal.4th at p. 1096.)

---

4       During oral argument here, the court asked Landlord's counsel multiple times to explain the reasonableness of Slater's fees. Landlord's counsel steadfastly refused to answer the court's questions on this issue.

In addition, the superior court only significantly reduced the lodestar as to Slater's pretrial and trial work. For Slater's posttrial work, the superior court awarded $12,000 out of a requested $12,501.[5] "The award was not clearly wrong; the superior court did not abuse its discretion." (*PLCM*, *supra*, 22 Cal.4th at p. 1096.)

DISPOSITION

The order is affirmed. Lessees are awarded their costs, including attorney fees as are appropriate under the lease for this appeal, as determined by the trial court.

HUFFMAN, Acting P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

---

[5] The superior court awarded Landlord substantially all the fees it requested for its appellate counsel and its current trial counsel, deducting one dollar from the former and 50 cents from the latter. In all, the superior court awarded Landlord $116,476 in fees and $7,558.97 in costs.